# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIFFANI POUGE on behalf of T.L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-254-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Tiffanie Pouge ("Pouge") on behalf of her minor daughter, T.L.P. ("Claimant"), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

Claimant was six years old at the time of the hearing before the ALJ on April 8, 2010. (R. 27). She was an only child and in first grade. (R. 28, 31)

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of the Social Security Administration, is substituted for Michael J. Astrue as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Pouge testified that she first noticed Claimant's speech problem when Claimant was three years old. (R. 32). Pouge stated that Claimant had trouble expressing herself and became frustrated because she could not pronounce certain words. (R. 32-33).

Pouge testified that Claimant had received some speech therapy in school. (R. 34). At the time of the hearing, Claimant received speech therapy once a week for thirty minutes. *Id*. It had previously been twice a week for thirty minutes. *Id*. Pouge testified that she did not believe thirty minutes once a week was enough because Claimant was not making satisfactory progress. *Id*. Pouge testified that she could not afford to hire a speech pathologist for Claimant. (R. 35).

Pouge stated that in addition to speech problems, Claimant had a heart block, resulting in Claimant's heart beating slower than normal. (R. 34-35). Pouge reported that Claimant went to the doctor on a regular basis to check her heart. (R. 35).

Pouge testified that on an average day, Claimant woke up at 6:45 a.m. to get ready for school. (R. 36). When Claimant came home from school, she occasionally took naps. *Id*. She would have a snack, do her homework, and watch a movie or play outside. *Id*. Then, she would eat dinner, take a bath, and prepare for bed. *Id*.

Pouge stated that Claimant's grandmother occasionally came over to visit. *Id*. On weekends, Claimant occasionally visited her father. *Id*.

Vera Harrigan, Claimant's grandmother, testified that she had custody of Claimant when Claimant was three years old. (R. 39). Harrigan testified that she felt Claimant was disabled when she was living with her because she could sometimes not understand Claimant. *Id*. Harrigan said that Claimant had problems pronouncing her S's, W's, T's, R's, and C's. (R. 40). Harrigan stated that Claimant would cry at times because she could not communicate. *Id*.

Harrigan testified that Claimant still had problems communicating. *Id*. Harrigan said that she had tried to teach Claimant how to pronounce letters and sounds. (R. 40-41).

Claimant briefly testified that she made good grades in school. (R. 28).

On January 5, 2009, Allis Kliewer, M.D., of Pediatric Cardiology of Oklahoma noted that Claimant had a "history of dysrhythmia[2] (1st and 2nd degree A-V)." (R. 176). Claimant continued to "demonstrate 2nd degree A-V block[3] on electrocardiogram." *Id*. Dr. Kliewer noted that from a cardiac standpoint, Claimant appeared to be stable, with no complaints. *Id*. An electrocardiogram and a 24-hour Holter monitor[4] revealed that Claimant demonstrated first-degree atrio-ventricular block[5] and transient second-degree atrio-ventricular block. (R. 177). Occasional ectopic complexes[6] were also noted. *Id*. Dr. Kliewer recommended that Claimant be followed clinically. (R. 176). Dr. Kliewer also recommended that Claimant undergo another 24-hour Holter monitoring and an electrocardiogram the following year. *Id*.

On February 1, 2010, Claimant returned to Dr. Kliewer for a follow-up appointment. (R. 237). Dr. Kliewer noted that Claimant had shortness of breath, but no other remarkable symptoms were present. *Id*. Dr. Kliewer noted that examinations were within their normal limits, and that the 24-hour Holter demonstrated normal sinus rhythm with second-degree atrio-

---

[2] "Abnormal, disordered, or disturbed rhythm." *Taber's Cyclopedic Medical Dictionary* 594 (17 ed. 1989) (hereinafter "*Taber's*").

[3] "Heart block in which one of two or three impulses passes from the atrium to the ventricle." *Taber's* at 858.

[4] "A portable device small enough to be worn by a patient during normal activity." *Taber's* at 908.

[5] "Heart block in which conduction time of impulses is prolonged but all atrial beats are followed by ventricular beats . . ." Taber's at 858.

[6] "Electrical stimulation or cardiac contraction beginning at a point other than the sinoatrial node." Taber's at 604.

ventricular block. *Id*. Dr. Kliewer also wrote that Claimant "[was] doing very well from a cardiac standpoint, [. . .] [and that] no cardiac intervention [was] required at this time." (R. 238).

On April 6, 2009, Paula Weaver, M.Ed., a speech pathologist, evaluated Claimant. (R. 207-08). Weaver noted that Claimant's speech was intelligible 70 percent of the time when the context of her statements was known, and 60 percent of the time when the context was unknown. (R. 207). Claimant's oral mechanism and voice/fluency were within normal limits. *Id*. Claimant passed her hearing evaluation at 20 decibels. (R. 208). Weaver noted that Claimant's prognosis was good because her attendance had improved. *Id*. Weaver noted that Claimant had an average ability to follow instructions, comprehend classroom discussions, remember information she had just learned, and express herself adequately when called on. *Id*. Weaver indicated that Claimant had a tongue thrust speech pattern, which caused articulation errors. *Id*. Weaver noted that after one year of therapy, Claimant had fixed some of her speech problems. *Id*. However, once Claimant left the speech room, her old speech patterns often returned. *Id*.

On April 6, 2009, Ms. Rozella Oryal, Claimant's kindergarten teacher, filled out a Teacher Questionnaire regarding Claimant. (R. 211-18). Ms. Oryal indicated that Claimant had been abnormally absent at the beginning of the year, but her attendance was no longer an issue. (R. 211). Ms. Oryal assessed Claimant with having no problems in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. (R. 212-16). On the "medical conditions and medications/health and physical well-being" section of the questionnaire, Ms. Oryal noted that Claimant frequently complained of pain, yet the pain would disappear within seconds of her complaint. (R. 217). In conclusion, Ms. Oryal noted that

"[Claimant] seems to be normal for a child her age in class. She gets along with others and gets involved in everything we do without any problems." *Id.*

On May 12, 2009, Penny Aber, M.D., a nonexamining agency consultant, completed a Childhood Disability Evaluation Form regarding Claimant. (R. 221-27). She concluded that Claimant's impairments of speech problems and a 2nd degree heart block were severe, but did not meet or equal a listing. (R. 221). Dr. Aber indicated that Claimant had no limitations in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, caring for herself, and in health and well-being. (R. 223-24). Dr. Aber did note that because of speech problems, Claimant had a less than marked limitation in interacting and relating with others. (R. 223). Dr. Aber used a speech/language report from February 22, 2008[7] in forming her opinions. *Id.*

On August 3, 2009, nonexamining agency consultant Charles Delhotal, M.D., reviewed the evidence in the record and affirmed Dr. Aber's May 12, 2009 assessment. (R. 228-33).

On March 24, 2010, an Individualized Education Program ("IEP") form was completed by Tulsa Public Schools. (R. 136-45). It was noted that compared to a February 2008 assessment, Claimant had "made progress in her speech and now only presents with errors on /s/ and /sh/." (R. 136). Despite Pouge's request for summer school, it was found to be unnecessary. (R. 137, 140-42).

## Procedural History

On March 26, 2009, Vera Harrigan filed for supplemental security income benefits under Title XVI, 42 U.S.C. § 1381 *et seq.*, on behalf of Claimant. (R. 103). Claimant's application for benefits was denied in its entirety initially and on reconsideration. (R. 44-46, 56-59). A hearing

---

[7] There is no speech/language report from this date contained within the record, however there is reference to an assessment conducted in February 2008. (R. 136).

before ALJ John Volz was held April 8, 2010, in Tulsa, Oklahoma. (R. 25-43). By decision dated April 29, 2010, the ALJ found that Claimant was not disabled at any time since the date the application was filed. (R. 7-24). On January 18, 2011, the Appeals Council denied review of the ALJ's findings. (R. 1-5). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

### Social Security Law and Standard of Review

A child under eighteen years of age is "disabled" for the purposes of determining benefits if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). A three-step sequential process guides the Commissioner's determination of whether a child meets the disability criteria. 20 C.F.R. § 416.924(a). The ALJ must determine (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child's impairment or combination of impairments is severe; and, (3) if severe, whether the child's impairment "meets, medically equals, or functionally equals the listings" set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.924(a).

The third step requires an initial determination of whether the impairment meets the requirements of a listing by satisfying "all of the criteria of that listing, including any relevant criteria in the introduction."[8] 20 C.F.R. § 416.925(c)(3). Next, if the child's impairment fails to meet the criteria, there must be a determination of whether it "medically equal[s] the criteria of a listing." 20 C.F.R. § 416.925(c)(5). An impairment is the medical equivalent of a listing "if it is

---

[8] An impairment cannot meet one of the listings merely on the basis of a diagnosis, there must be "a medically determinable impairment(s) that satisfies all of the criteria." 20 C.F.R. § 416.925(d).

6

at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Medical equivalence can be found where the child has an impairment included in the listings, but "do[es] not exhibit one or more of the findings specified" for the particular listing examined, or "one or more of the findings is not as severe as specified," yet there are "other findings related to [the] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(i)-(ii). Last, if the impairment neither meets nor medically equals any listing, there must be a determination of "whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a).

For an impairment to be the functional equivalent of a listing, it must be of listing-level severity because it results in either marked[9] limitations in two domains of functioning or an extreme[10] limitation in one domain. 20 C.F.R. § 416.926a(a). In assessing functional limitations, the ALJ considers all relevant factors outlined in 20 C.F.R. §§ 416.924a, 416.924b,

---

[9] There is a "marked" limitation in a domain where the impairment(s) interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* The regulations further state:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

[10] There is an "extreme" limitation in a domain where the "impairment(s) interferes *very* seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i)(emphasis added). "Extreme" refers to the worst limitations, but "does not necessarily mean a total lack or loss of ability to function." *Id*. "Extreme" represents the equivalent of functioning shown by a valid score at least "three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

7

and 416.929, including (1) how well the child initiates and sustains activities, whether he needs extra help, "and the effects of structured or supportive settings"; (2) how the child functions in school; and (3) how the child is affected by medications or treatments. 20 C.F.R. § 416.926a(a)(1)-(3). The ALJ examines whether the child functions "appropriately, effectively, and independently" in six domains, *i.e.*, "broad areas of functioning intended to capture all of what a child can or cannot do," compared with the abilities of other unimpaired children the same age. 20 C.F.R. § 416.926a(b)(1). The six domains are "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (*quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Claimant was at all relevant times a school-age child. (R. 13). At Step One, the ALJ found that Claimant had not engaged in substantial gainful activity. *Id.* At Step Two, the ALJ found that Claimant's speech problem was a severe impairment. *Id.* At Step Three, the ALJ found that Claimant's severe impairment did not meet a listing or medically equal the criteria of any listing. *Id.*

The ALJ then evaluated the six domains set forth in 20 C.F.R. § 416.926a(b)(1)(i)-(vi) to analyze whether Claimant's severe impairment was functionally equivalent to a listing. He found that Claimant had a less than marked limitation in the domain of interacting and relating with others. (R. 18). The ALJ found that Claimant had no limitation in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, caring for herself, and health and physical well-being. (R. 16-20). Because he determined that Claimant had neither an "extreme" limitation in one domain of functioning nor a "marked" limitation in two domains, the ALJ found that Claimant was not disabled since the February 24, 2009 filing date. (R. 21).

**Review**

Claimant argues that the ALJ committed legal error at Step Three because he failed to properly consider whether Claimant's speech impairment was medically equivalent to a listed impairment. Plaintiff's Opening Brief, Dkt. #17, p. 4. Claimant also argues that the ALJ committed legal error by failing to conduct a proper analysis of Claimant's credibility and by failing to perform a proper analysis of the credibility of Claimant's mother and grandmother. *Id.* at 8. Regarding the issues raised by Claimant, the undersigned finds that the ALJ's decision is

9

supported by substantial evidence and complies with legal requirements. Therefore, the ALJ's decision is affirmed.

**Equivalency Issues**

Claimant's first argument, that the ALJ failed to properly consider whether Claimant's speech impairment was medically equivalent to a listed impairment, is not persuasive. The ALJ found that Claimant did not have an impairment, or combination of impairments, that functionally equaled the listings (20 C.F.R. § 416.924(d) and § 416.926[a]). (R. 13).

Claimant argues that she met the listing of Section 111.09A, which requires that a "communication impairment [be] associated with documented neurological disorder" and a "[d]ocumented speech deficit which significantly affects the clarity and content of the speech." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (other subsections omitted). Because there is no evidence that the Claimant had a neurological disorder, she could not meet the requirements of this Listing. Medical equivalence could have been found if Claimant had an impairment that was closely analogous to a neurological disorder, but there was no such evidence in the record. *See* 20 C.F.R. § 404.1526(d)(e) (explaining who can provide and evaluate medical evidence).

Because Claimant did not have an impartment that was medically equivalent to a Listing, the ALJ was required to determine whether Claimant's impairment was functionally equivalent to a listed impairment. To determine functional equivalency, the ALJ must determine if the claimant has "marked" or "extreme" limitations in the following categories: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926(b)(1)(i-vi). To be considered functionally equivalent,

10

"[the impairment] must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain, as explained in this section." 20 C.F.R. § 416.926(a).

Based on the Teacher's Questionnaire completed by Ms. Oryal, the ALJ determined that Claimant had no limitations in the following domains: acquiring and using information, attending and completing tasks, moving about and manipulating objects, or in caring for herself. (R. 16-20). In finding that Claimant had no limitation in the domain of health and physical well-being, in addition to citing to the Teacher's Questionnaire, the ALJ noted that Claimant's physicians had not placed any restriction on her. (R. 20). The ALJ cited Dr. Kliewer's treatment records, medical records from Riverside Pediatrics, treatment records from Dr. Baker, and records from Pediatric Cardiology of Oklahoma to support this determination. *Id*. In the domain of interacting and relating to others, the ALJ found that Claimant was limited due to her speech problems. (R. 18). However, he found this limitation to be "less than marked" because her teacher did not report any limitations in this area. *Id*. The Court finds that there was substantial evidence that Claimant's limitations were not "severe" or "marked." *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (reversal inappropriate when substantial evidence supports the ALJ's determination).

Claimant argues that the ALJ did not properly consider the evidence provided by her speech pathologist because he did not mention it in his Step Three analysis. Plaintiff's Opening Brief, Dkt. #17, p. 6. However, this evidence was mentioned in his decision. (R. 15). The Tenth Circuit has held that the ALJ is required to consider, but not specifically discuss, each piece of evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir.1996). The ALJ did consider the evidence produced by Claimant's speech pathologist because it appeared in his decision. (R.

18).  The Tenth Circuit has often stated that the court takes the ALJ at his word when he states that he has considered all of the evidence.  *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

**Credibility Issue**

Claimant also argues that the ALJ committed legal error by failing to perform a proper analysis of Claimant's credibility and by failing to perform a proper analysis of the credibility of Claimant's mother and grandmother.  As set forth by the 10th Circuit:

> If the child claimant is unable to adequately describe his symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition. 20 C.F.R. § 416.928(a). In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying.

*Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

Credibility determinations by the trier of fact are given great deference.  *Hamilton v. Secy. of Health & Human Servs.,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White,* 287 F.3d at 910.  In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.  "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

Here, the ALJ described the testimony of Claimant's mother and grandmother in some detail. (R. 14-16).  He wrote that "while the claimant's mother, Tiffani Pouge, and the claimant's grandmother, Vera Harrigan [sic], reported some problems understanding the claimant, these problems appear to be minor." (R. 16).  He observed that Claimant's mother and

12

grandmother reported limitation, but her teacher did not. (R. 18). He noted that if Claimant's speech problems were as severe as alleged, her guardians would have sought additional speech therapy. (R. 16). He observed that neither the claimant's mother nor grandmother alleged any limitations in regards to Claimant's daily activities. *Id*. The ALJ used the facts that "Claimant [was] able to take care of her personal needs, go to school, watch television, play with her [handheld-video game] and play outside" to support this determination. *Id*. Moreover, Ms. Oryal reported that Claimant did not have any problems in the six domains, nor had any problems in school. *Id*.

As the Tenth Circuit stated in *Keyes-Zachary*, common sense is the guide for the Court's review of the ALJ's credibility assessment. Here, it is evident the testimony of Claimant's mother and grandmother, even if found fully credible, did not support limitations other than the less than marked limitation found by the ALJ. (R. 18). The fact that Claimant had speech problems does not, in itself, implicate any domains other than the domain of interacting and relating to others, and the ALJ found a less than marked limitation in that domain. The same is true of Pouge's testimony that Claimant had some difficulty communicating. Her testimony regarding Claimant's speech did not indicate problems of a severity that would reflect a limitation in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, caring for herself, or health and physical well-being.

Thus, the undersigned finds that the ALJ's credibility assessment, while not as detailed or articulate as would have been preferable, is sufficient to express his view that the testimony of Pouge and Harrigan simply did not establish the severity of Claimant's limitations beyond the one less than marked limitation that he found. *See Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302-03 (10th Cir. 2011) (allegations of severity were undercut by testimony of parent and

child reflecting "very little limitation"); *Porter v. Colvin*, 2013 WL 2150960 *3 (May 20, 2013 10th Cir.) (unpublished) (affirming ALJ's finding regarding mother's credibility). The undersigned is mindful that the Court cannot supply reasons to support the ALJ's credibility assessment that were not given by the ALJ himself. Judicial review of an agency decision is limited to the analysis offered in the ALJ's decision, and it is improper for a reviewing court to offer a "post-hoc rationale" in order to affirm. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Here, the Court's intention is not to make a finding based on a new rationale not provided by the ALJ; instead, the Court finds that a common sense interpretation of the ALJ's credibility assessment leads to the conclusion that the ALJ found that neither Pouge's nor Harrigan's testimony established the severity of Claimant's limitations beyond those found by the ALJ in his RFC.

## Conclusion

Based upon the foregoing, the Court **AFFIRMS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 5th day of July 2013.

_____
Paul J. Cleary
United States Magistrate Judge